**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| MATTHEW SHAWN VICTOR BRIDGES, | No. 23-CV-3-CJW-MAR (No. 20-CR-108-CJW-MAR) |
| Petitioner, | **ORDER** |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

_____

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................. 3

II.     RELEVANT BACKGROUND ........................................................... 3

III.    STANDARDS FOR RELIEF ........................................................... 18

        A.      Section 2255 Standard ........................................................... 18

        B.      Ineffective Assistance of Counsel Standard ..................................... 19

IV.     ANALYSIS ...................................................................................... 20

        A.      Request for Evidentiary Hearing ................................................. 21

        B.      Advice to Plead Guilty ............................................................ 22

        C.      Failing to Investigate .............................................................. 24

        D.      Failure to Attempt to Suppress Evidence ....................................... 26

        E.      Misrepresenting the Likely Sentence ........................................... 27

1

F.      Failure to File Appeal ……………………………………………27

V.    CERTIFICATE OF APPEALABILITY……………………………………28

VI.   CONCLUSION …………………………………………………………28

# I.    INTRODUCTION

This matter is before the Court on petitioner's January 13, 2023 Motion to Vacate, Set Aside or Correct Sentence.   (Doc. 1).[1]   On February 23, 2023, the Court conducted an initial review of petitioner's motion, appointed counsel to represent petitioner, ordered petitioner's former attorney to file an affidavit addressing allegations of ineffective assistance of counsel, and ordering the parties fully brief the merits of petitioner's allegations.   (Doc. 5).   As of June 2, 2023, all parties timely and fully complied with the Court's order.[2]   The Court has now conducted a full review of petitioner's motion on the merits.   For the following reasons, the Court **denies** all but one of petitioner's claims on the merits, finding an evidentiary hearing unnecessary because the record is sufficient to resolve the issues.   As to petitioner's allegation that he requested his attorney file an appeal, the Court will conduct an evidentiary hearing on that claim alone.   That hearing is scheduled for August 25, 2023.   (*See* Doc. 26).

# II.    RELEVANT BACKGROUND

On December 15, 2020, a grand jury returned a six-count indictment against petitioner, charging him with conspiracy to distribute a controlled substance (Count 1), two counts of possession with the intent to distribute a controlled substance (Counts 2 and 5), and three counts of possessing a firearm as a felon (Counts 3, 4, and 6).   (Crim. Doc. 2).   On December 18, 2020, the Court appointed a federal public defender to represent petitioner.   (Crim. Doc. 7).   On the same day, petitioner made his initial appearance, and the Court scheduled trial for February 16, 2021.   (Crim. Docs. 8; 11).

---

[1] References to "Doc." are to docket entries in this case, 23-CV-0003-CJW-MAR.   References to "Crim. Doc." are to docket entries in the underlying criminal case (20-CR-108-CJW-MAR).

[2] The Court notes that petitioner filed his own pro se response to the government's brief and asked for production of documents.   (Doc. 18).   The Court appointed counsel to represent petitioner, and so the Court will not acknowledge petitioner's pro se pleadings.   Petitioner cannot at once be represented by an attorney and file documents pro se.

Case 1:23-cv-00003-CJW-MAR   Document 28   Filed 06/30/23   Page 3 of 29

On January 14, 2021, the Court granted petitioner's motion to continue the trial. (Crim. Docs. 19; 20).

On January 29, 2021, petitioner filed a motion to suppress evidence. (Crim. Doc. 25). In that motion, petitioner argued that the police seized his car without probable cause. (Crim. Doc. 25-1, at 5-7). As the Honorable Mark A. Roberts, United States Magistrate Judge explained in his Report and Recommendation ("R&R"), the single issue was factually complex.

> The single issue raised by Defendant is the warrantless seizure of the purple Kia Optima he was driving on February 16, 2020. The parties disagree regarding whether that seizure was supported by probable cause when Sergeant Wegg seized it. The Government contends that, even if law enforcement lacked probable cause for the seizure, evidence obtained from the vehicle pursuant to a later search warrant should not be suppressed because of the good-faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984). Thus, the legal issues presented are at least straightforward.
>
> The facts are more complicated. The seizure followed a February 15, 2020 home invasion or burglary by Defendant and others. However, the facts for the Court to consider stretch back to January 3, 2020 when a police encounter resulted in the impoundment of a black Hyundai Elantra owned by Defendant's girlfriend, Nyjaya Foster. Sergeant Wegg testified regarding both events. In addition, Sergeant Wegg's investigation continued after the February 16, 2020 seizure of Defendant's vehicle. Sergeant Wegg obtained a warrant to search Defendant's vehicle on February 27, 2020. His affidavit in support of the warrant application thus contains information that came to the attention of law enforcement after Defendant's vehicle was seized on February 16. This affidavit is in evidence along with Sergeant Wegg's testimony from the February 24, 2021 hearing, and the transcript of a July 30, 2020 deposition he gave in an Iowa District Court criminal prosecution of Defendant. One challenge presented to the Court is teasing out from these sources what law enforcement (principally in the person of Sergeant Wegg) knew at the time of the seizure.

(Crim. Doc. 36, at 3-4 (footnote omitted)). The Court adopted Judge Roberts' R&R and denied petitioner's motion to suppress the evidence. (Crim. Doc. 65).

4

On March 26, 2021, the Court granted petitioner's second motion to continue the trial, rescheduling it for June 1, 2021.   (Crim. Doc. 35).

On May 21, 2021, on the eve of trial, the Assistant Federal Public Defender filed a motion to withdraw as counsel having discovered a conflict of interest.   (Crim. Doc. 105).   The Court granted the motion and appointed new counsel for petitioner.   (Crim. Docs. 109; 110).

On May 26, 2021, however, attorney Murdoch entered his appearance on behalf of petitioner, having been retained; appointed counsel moved to withdraw, and the Court granted that motion.   (Crim. Docs. 112; 113; 114; 115; 116; 117).

On May 28, 2021, the Court granted petitioner's third motion to continue the trial date, setting the new trial date for September 13, 2021.   (Crim. Doc. 120).

On August 23, 2021, petitioner filed a notice of intent to plead guilty.   (Crim. Doc. 131).   Petitioner filed a motion to continue on August 30, 2021, stating that although petitioner signed a plea agreement with the government, there was a delay in getting the signed plea agreement to petitioner's attorney, as explained by his attorney:

> On August 20, 2021, Mr. Bridges executed the Plea Agreement, and mailed it to counsel's office on the same date.   On August 23, 2021, Mr. Bridges filed his Notice of Intent to Plead Guilty.   ECF No. 131.   On August 26, 2021, Thursday, undersigned counsel spoke with Mr. Bridges and further confirmed all above.   However, as of the evening of August 28, 2021, counsel has not received the plea paperwork.   Counsel is currently in touch with the Government while awaiting the delivery of the plea paperwork, and is coordinating other options so to obtain another copy of executed Plea Agreement.   As such, given that prison mail delivery speed is affected by many factors, additional time is necessary for the parties to come to a pretrial resolution of this matter.

(Crim. Doc. 133, at 2-3).

The Court granted the motion.   (Crim Doc. 135).

On September 7, 2021, petitioner entered a guilty plea to Counts 1, 3, and 6 of

the indictment, which the Court later accepted. (Crim. Docs. 140; 142). In the plea agreement, petitioner acknowledged the maximum sentences that the Court could impose and acknowledged that there were no promises as to the sentence he would receive. (Crim. Doc. 139, at 1-2, 7-8). Petitioner stipulated to facts that established his guilt for each charge. (*Id.*, at 3-7). Petitioner acknowledged that he entered into the plea agreement voluntarily and not due to "threats, force, intimidation, or coercion of any kind." (*Id.*, at 17).

At the change of plea hearing, the Court placed petitioner under oath and first ensured that there was nothing that would interfere with petitioner's ability to understand the proceeding:

> THE COURT: Do you know of any reason that you might have difficulty understanding these proceedings?
>
> THE DEFENDANT: I do not.
>
> THE COURT: It's important that you do understand everything that we do here today. So if there is something that you don't understand, would you please stop me and let me know?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Also we're not in any hurry, so if you do want to stop and visit with Mr. Walker about anything that comes up, we'll certainly make time for you to visit with him confidentially. Mr. Walker, do you have any reason to believe that Mr. Bridges is not competent to enter a guilty plea?
>
> MR. WALKER: No, Your Honor.

(Crim. Doc. 162, at 3, 5-6). Petitioner told the Court that he was satisfied with the services of his attorney.

> THE COURT: Have you been generally satisfied with the services provided by Mr. Walker?

THE DEFENDANT: I have.

(*Id.*, at 7).

The Court very carefully and thoroughly discussed each element of the offense charged, and petitioner admitted, under oath, facts that established a factual basis for the guilty pleas. (*Id.*, at 10-17).

The Court also discussed the plea agreement with petitioner. Petitioner admitted that he reviewed the plea agreement, that he understood it, and by initialing each paragraph, he signified that the information was true and correct and that he had plenty of time to discuss the plea agreement with his attorney before he signed it.

THE COURT: Now, the parties have entered into a plea agreement in this case. It's in the form of a[n] August 18, 2021, letter to Mr. Walker from Mr. Reinert. It's been marked as Government's Exhibit 1. Is that being offered into evidence at this time?

MR. REINERT: Yes, Your Honor.

THE COURT: Any objection?

MR. WALKER: No, Your Honor.

THE COURT: Government's Exhibit 1 is admitted.

THE COURT: Before I discuss this further with Mr. Bridges, I have a question about a couple of notations that perhaps we need some record on or at least I need some clarification. Mr. Reinert, if you look at page 7, 9L, there's a question mark written there. And I wonder if you could explain that to me or what your understanding of what the purpose of that is or if we need to clarify anything about that.

MR. REINERT: It was my understanding, Your Honor, from talking to counsel that that was a question mark put by the defendant as he was reviewing the agreement mostly to flag it as a matter he wanted to talk with his attorney about and have his attorney talk to me about. But ultimately

it was initialed and agreed to as being factually true is my understanding.

THE COURT: Okay. And is that your understanding also, Mr. Walker?

MR. WALKER: Yes, Your Honor. My office is obviously based out of Atlanta, Your Honor. He's incarcerated. So the communications—that was a way that he had flagged something for me to discuss with him and then subsequently discuss with the government.

THE COURT: And that's perfectly appropriate, Mr. Walker. And, Mr. Bridges, I just want to be sure that you don't think later that because you put a question mark by one of those provisions at some point that that's some sort of technicality that will help you in the future get out of any of the provisions. You understand that?

THE DEFENDANT: I do.

THE COURT: And then another question I have starting with you again, Mr. Reinert, it looks like paragraph 12E with respect to acceptance of responsibility has been X'ed out. What's your understanding of that?

MR. REINERT: Well, Your Honor, that paragraph was focused on the fact that we had prepared for trial and the defendant was going—in that paragraph we were going to have the defendant agree that we had prepared for trial and that he was not eligible for the third level. Defendant has crossed that section out, so there is no stipulation regarding whether he gets the third level for acceptance or not. We'll have to cross that bridge when we get to it.

THE COURT: Okay. So do you agree with that, Mr. Walker?

MR. WALKER: Yes, Your Honor.

THE COURT: Okay. So putting it in my own words and hopefully you understand it this way too, Mr. Bridges, that it's still a fighting issue at the time of your sentencing whether you're going to get another break in terms of what your sentence is because you may not have timely accepted responsibility. But the court will have to take that up later. There's not an agreement about that. Do you understand that?

8

THE DEFENDANT: I do.

THE COURT: If you could turn with me, please, then, Mr. Bridges, to the very last page of the plea agreement, I don't think we discussed this. I want to make sure this is your signature. I think you'll see a signature on the line for Matthew Bridges. Is that your signature?

THE DEFENDANT: It is, Your Honor.

THE COURT: Did you review the plea agreement in detail in its entirety with Mr. Walker before you signed it?

THE DEFENDANT: I did.

THE COURT: By signing it, did you intend to indicate that you read, understood, and agreed to the terms of the plea agreement?

THE DEFENDANT: I did.

THE COURT: Now, I don't want you to tell me about your conversations in substance with Mr. Walker. That's all privileged. But I do want to make sure that you believe that you had plenty of time to discuss this in detail with him. Do you believe you had a sufficient opportunity to discuss the plea agreement in detail with Mr. Walker before you signed it?

THE DEFENDANT: I do.

THE COURT: Do you also believe that you had plenty of opportunity to ask him questions about it?

THE DEFENDANT: I do.

THE COURT: Was Mr. Walker able to answer all of your questions to your satisfaction?

THE DEFENDANT: He was.

THE COURT: As we sit here today, do you have any questions whatsoever about the plea agreement that you entered into with the government?

THE DEFENDANT: I do not.

THE COURT: Now, the plea agreement does call for the dismissal of the charges you're not pleading to. That would be Counts 2, 4, and 5. That has to be approved by the district court judge, and if the district court judge does not agree to dismiss those charges, you'll be allowed to withdraw your guilty plea to Counts 1, 3, and 6. Do you understand that?

THE DEFENDANT: I do.

THE COURT: If you could turn then with me, Mr. Bridges, in the plea agreement to page 3, you'll see a section there called Stipulation of Facts that begins with paragraph 9. And it continues all the way to paragraph 9L on page 7. And next to each of those paragraphs, I see some initials. Are those your initials in each of those places?

THE DEFENDANT: They are, Your Honor.

THE COURT: And by placing your initials there, did you intend to indicate that the information contained in those paragraphs is true and correct?

THE DEFENDANT: Yes.

THE COURT: I just noticed another little question mark with respect to paragraph J on page 6. I take it that the same explanation applies, that that was just something that Mr. Bridges flagged for you to address, Mr. Walker; is that correct?

MR. WALKER: Yes, Your Honor.

THE COURT: Do you understand that, Mr. Bridges?

THE DEFENDANT: Yes.

THE COURT: Okay. In fact, throughout the plea agreement, where I see those little blanks, I see those same initials, M.B. Are those your initials in each of those places?

THE DEFENDANT: They are.

THE COURT: Did you place your initials there to indicate that you read, understood, and agreed to the terms of each of those paragraphs?

THE DEFENDANT: I did.

(*Id.*, at 17-23).

The Court also discussed the statutory maximum and minimum sentence the Court could impose, along with the calculation of the guidelines, emphasizing that the Court would determine petitioner's sentence, and it may be different than what petitioner's attorney may have estimated.

THE COURT: Mr. Bridges, at this point I need to talk to you about the penalties that apply in this case. I'm sure that's something that you and Mr. Walker would have already visited about, and I know it's covered by your plea agreement. I just want to make sure for our hearing today that you do understand what you're facing. Count 1 of the indictment is punishable by a mandatory minimum sentence of 10 years' imprisonment and the following maximum penalties: First, not more than life imprisonment without the possibility of parole; second, a fine of not more than 10 million dollars; third, a mandatory special assessment of $100; and, fourth, a term of supervised release of at least 5 years and up to life. Counts 3 and 6 are each punishable by the following maximum penalties: First, not more than 10 years' imprisonment without the possibility of parole; second, a fine of not more than $250,000; third, a mandatory special assessment of $100; and, fourth, a term of supervised release of not more than 3 years. You should also understand that those penalties can become more severe depending on your criminal history, some of which we've already talked about here today. Mr. Bridges, have you had a full opportunity to discuss your entire criminal history in detail with Mr. Walker?

THE DEFENDANT: I have, Your Honor.

THE COURT: Then I assume the two of you will have some idea if these more serious penalties might come into play, but I do think it's important for us to at least touch on those. If the court finds that you have three previous convictions for a violent felony or serious drug offense or both committed on occasions different from one another, then Counts 3 and 6

are each punishable by a mandatory minimum sentence of 15 years' imprisonment without the possibility of parole and the following maximum penalties: First, not more than life imprisonment without the possibility of parole; second, a fine of not more than $250,000; third, a mandatory special assessment of $100; and, fourth, a term of supervised release of not more than 5 years. Do you understand the minimum and maximum punishments which could be imposed in this case?

THE DEFENDANT: I do.

THE COURT: Now, at the time of your sentencing, the judge will perform a calculation under the federal sentencing guidelines that are issued by the United States Sentencing Commission. And that calculation will result in what's called an advisory guideline range. That's simply a range of months within which the commission suggests that the judge should sentence you based on your crime and your background. The judge has to consider this advisory range in determining your sentence, but the judge is not bound to sentence you within that range. That means the judge can give you more time or less time, depart upward or downward from the advisory guideline range, based on factors listed in those guidelines and the sentencing statutes. So it's important for you to understand, Mr. Bridges, that the sentence ultimately imposed by the judge in your case could be different from what those guidelines suggest it should be, and it could be different from what Mr. Walker may have estimated or predicted that you would receive, and it could be all the way up to the statutory maximum sentence which in this case for Count 1 could be life imprisonment without the possibility of parole. For Counts 3 and 6, it could be 10 years' imprisonment without the possibility of parole for each of those crimes. And if you have those three previous convictions we were talking about, you could be facing life imprisonment on each of those counts. Do you understand that?

THE DEFENDANT: I do.

THE COURT: You should also understand that however the guideline range is calculated and regardless of whether the judge departs or varies from those guidelines, that with respect to Count 1, the judge cannot sentence you below 10 years' imprisonment because that's the statutory mandatory minimum. Do you understand that?

12

THE DEFENDANT: I do.

THE COURT: And if you have those three previous convictions, you could be facing statutory mandatory minimums on Counts 3 and 6 of 10 years' imprisonment without the possibility of parole. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Now, I assume that you understand what making sentences consecutive as opposed to concurrent mean, but at the risk of offending you, I do want to discuss it just briefly. If any of these sentences are run consecutively, that means one after the other, so you're going to be in prison for a longer period of time. If they're run concurrently, then they—it would be a shorter period of time. Do you understand that?

THE DEFENDANT: I do.

(*Id.*, at 24-28).

The Court ensured that petitioner was pleading guilty because he was guilty, and not as the result of any pressure, threats, or promises, other than those made in the written plea agreement. Petitioner denied any pressure and averred that he was pleading guilty voluntarily.

THE COURT: Mr. Bridges, if you plead guilty and the district court judge accepts that guilty plea, you'll have no right to withdraw that guilty plea later even if you change your mind or even if you're unhappy with the sentence ultimately imposed by the judge. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Has anyone forced, pressured, or threatened you in any way to get you to plead guilty or made any promises to get you to plead guilty other than what's in the plea agreement?

THE DEFENDANT: They haven't.

\*       \*       \*

13

THE COURT: Mr. Bridges, we've certainly covered a lot of information here this afternoon, and I do want to take a moment to be sure that you understood it all so you don't come back next week or next month or next year and say that you didn't understand something or that somebody forced or pressured you to plead guilty. Have you been able to understand everything we've talked about?

THE DEFENDANT: I have.

THE COURT: Do you have any questions about any of it?

THE DEFENDANT: I don't.

THE COURT: Has anyone forced or pressured you to plead guilty?

THE DEFENDANT: No.

THE COURT: Is your decision to plead guilty a voluntary decision?

THE DEFENDANT: It is.

THE COURT: Then formally and for the record, how do you plead to Count 1 of the indictment which charges you with the crime of conspiracy to distribute a controlled substance? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 3 of the indictment which charges you with the crime of possession of a firearm by a felon? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And finally, how do you plead to Count 6 of the indictment which charges you with the crime of possession of a firearm by a felon? Guilty or not guilty?

THE DEFENDANT: Guilty.

(*Id.*, at 31-33).

On November 10, 2021, the United States Probation Office filed its draft Presentence Investigation Report ("PSR"). (Crim. Doc. 143). On November 24, 2021, petitioner's attorney filed a motion for an extension of time to file objections to the draft PSR. (Crim. Doc. 145). The Court granted the motion. (Crim. Doc. 146). On December 7, 2021, petitioner filed his timely objections to the draft PSR. (Crim. Doc. 147).

On January 3, 2022, the United State Probation Office filed the final PSR. (Crim. Doc. 148). The PSR determined petitioner's base offense level to be 38, based on drug quantity. (*Id.*, at 13). The PSR applied a two-level enhancement for possession of dangerous weapons, finding petitioner possessed at least seven different firearms (four rifles and three handguns), ASP batons, stun guns, and a taser. (*Id.*, at 15). The PSR also applied a two-level enhancement for use of violence because, on February 15, 2020, petitioner, who was armed with an ASP baton and a revolver, went to a residence where [W.S.] was staying and confronted [W.S.] for taking the defendant's cellular telephone and "some dope" from petitioner, hitting [W.S.] with the ASP baton. (*Id.*). The PSR also imposed a three-level enhancement for occupying an aggravating role. (*Id.*, at 17). This resulted in an adjusted offense level of 45. (*Id.*, at 18). After a three-level reduction for acceptance of responsibility, petitioner's total offense level became 42. (*Id.*, at 19). Petitioner's attorney lodged objections to the drug quantity and use of violence enhancement. (*Id.*, at 13-14, 15).

On January 5, 2022, the Court scheduled a sentencing hearing to occur on March 25, 2022. (Crim. Doc. 149). On March 8, 2022, petitioner filed a joint motion to continue the sentencing hearing. (Crim. Doc. 150). The Court granted the motion, continuing the sentencing hearing until June 30, 2022. (Crim. Doc. 151).

On June 22, 2022, petitioner filed a motion for a downward variance. (Crim. Doc. 152). The following day, the government filed a resistance to the motion. (Crim. Doc. 153). On June 27, 2022, petitioner filed a sentencing memorandum. (Crim. Doc.

154).

On June 30, 2022, the government filed a notice of sentencing agreement it reached with petitioner. (Crim. Doc. 155). The agreement stated:

> The presentence report (PSR) found the advisory guidelines to be:
> 1. Base offense level to be level 38 (PSR ¶ 18);
> 2. Possession of a firearm (+2 levels) (PSR ¶ 19);
> 3. Use of Violence (+2 levels) (PSR ¶ 20);
> 4. Role in the Offense (+3 levels) (PSR ¶ 22); and
> 5. Acceptance of responsibility (-3 levels) (PSR ¶¶ 26-27)
>
> This results in an adjusted offense level of level 42 (PSR ¶ 28) and a range of 360 months to life imprisonment since defendant is a category V offender. (PSR ¶¶ 51, 102).
>
> The presentence report has identified the contested issues as (1) base offense level; (2) use of violence and (3) role in the offense. The parties have agreed to a resolution of these issues and a withdrawal of all factual objections supporting these adjustments. The defendant will withdraw his objection to the base offense level of 38 in PSR ¶ 18. The United States will not present evidence or seek the two-level increase for the use of violence in PSR ¶ 20. The parties agree a 2-level increase for role in the offense as set forth in PSR ¶ 22 is appropriate. This results in the following:
> 1. Base Offense level of 38;
> 2. A two-level increase for possession of a firearm;
> 3. A two-level increase for role in the offense
> 4. A three-level decrease for acceptance of responsibility.
>
> This results in an adjusted offense level of 39 and an advisory guidelines range of 360 months to life imprisonment.

(*Id.*).

On June 30, 2022, the Court held a sentencing hearing. At the hearing, the Court asked petitioner about his opportunity to review the PSR and his understanding of the sentencing agreement he reached with the government.

> THE COURT: Did you have an opportunity, sir, to go through this report on your own?
>
> THE DEFENDANT: Yes, sir.

THE COURT: And do you feel like you've had enough time to discuss this with Mr. Walker?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions—[w]ell, let me ask you, first of all, was Mr. Walker able to answer any questions you had originally about this presentence report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions today about this presentence report?

THE DEFENDANT: No, Your Honor.

THE COURT: Now, you've heard both the Government and Mr. Walker talk about this sentencing agreement that's been reached, and that's the sentencing agreement you understand you have reached with the Government, as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And you understand I'm not bound by that and you don't have to reach that kind of agreement. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I will tell you it is my practice that when the Government and a defendant reach a sentencing agreement, so long as I don't find it to be an unreasonable one, I tend to adopt those sentencing agreements even though I am not obligated to do so. And here I don't find this agreement to be unreasonable, and so I intend to adopt it. But it's important for you to understand if you want to, you could maintain your objections and I'd have to make a decision on the contested issues. And you understand you would have that right?

THE DEFENDANT: Yes, Your Honor.

17

(Crim. Doc. 160, at 2).  After departing downward for reasons unrelated to petitioner's offense conduct, the Court sentenced petitioner to 288 months in prison.  (Crim. Doc. 157).  Petitioner did not appeal his sentence.

## III.  STANDARDS FOR RELIEF

### A.  Section 2255 Standard

A federal prisoner seeking relief from a sentence under Title 28, United States Code, Section 2255

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  To obtain relief under Section 2255, the movant must allege a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).  An offender must file a motion under Section 2255 within the one-year statute-of-limitation.  28 U.S.C. § 2255(f).

Claims brought under Section 2255 may also be limited by procedural default.  A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not."  *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)).  Also, even constitutional or jurisdictional claims not raised on direct appeal cannot be raised collaterally in a Section 2255 motion "unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence."  *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

18

The Court must hold an evidentiary hearing to consider claims on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255). Thus, a movant is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the movant] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

Here, petitioner filed his motion in a timely manner, within the one-year statute-of-limitation. *Campa-Fabela v. United States*, 339 F.3d 993, 993-94 (8th Cir. 2003). Because the Court finds petitioner's claims inadequate on their face, no evidentiary hearing is necessary.

### B. Ineffective Assistance of Counsel Standard

The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . the assistance of counsel for his defense." U.S. CONST. amend. VI. Thus, a claim of ineffective assistance of counsel necessarily gives rise to a constitutional issue. *See Evitts v. Lucey*, 469 U.S. 387, 395–96 (1985). Unlike other constitutional issues, however, claims of ineffective assistance of counsel are better suited for collateral attack under Section 2255 than direct appeal because the reviewing court is able to consider the entire record. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Accordingly, "a showing of ineffective assistance of counsel [generally] satisfies both cause and prejudice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

"To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden[.]" *Id.* The petitioner must prove his

19

counsel's representation was (1) deficient, and (2) the deficient representation prejudiced petitioner's defense. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Deficient" representation is representation that falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. It is conduct that fails to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Id.* at 687. In assessing the deficiency prong, courts presume "counsel's conduct falls within a wide range of reasonable professional assistance." *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). Counsel's deficient representation is, in turn, "prejudicial" if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Because a petitioner must show both deficient performance and prejudice, a court need only address one prong of the ineffective assistance analysis if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Further, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning courts should not take into account "the cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

## IV.    ANALYSIS

Petitioner raises five grounds in his motion. (Doc. 1). Petitioner alleges that his attorney was ineffective for (1) giving him incompetent advice to plead guilty; (2) failing to investigate the case; (3) failing to attempt to suppress evidence; (4) misrepresenting the likely sentence; and (5) failing to appeal at petitioner's request. (*Id.*, at 2-8). The Court will address each of petitioner's claims in turn.

## A.    Request for Evidentiary Hearing

Before turning to the merits of petitioner's claims, however, the Court will first address whether an evidentiary hearing is necessary.

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under Title 28, United States Code, Section 2255. *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without an evidentiary hearing "if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, the court can dismiss a Section 2255 motion without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Adejumo v. United States*, 908 F.3d 357, 361 (8th Cir. 2018); *Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

Here, the Court concludes that it is able to resolve all but one of petitioner's claims from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the information that the court needed to make its decision with regard to

[the petitioner's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674 (1980))). The evidence of record conclusively demonstrates that petitioner is not entitled to the relief sought on the first four claims. Specifically, the evidence indicates that petitioner's first four assertions are without merit on the record. As such, the Court finds there is no need for an evidentiary hearing on the first four issues.

In contrast, the Court finds it must hold an evidentiary hearing on petitioner's claim that he asked his attorney to file an appeal and his attorney did not. Petitioner claims this happened; his attorney denies it. For the reasons explained below, the Eighth Circuit Court of Appeals has made it clear that to resolve this conflict, the Court must hold a hearing. Thus, the Court will hold an evidentiary hearing, but only on the last of petitioner's claims.

### B. *Advice to Plead Guilty*

Petitioner alleged his attorney forced him to plead guilty. (Doc. 1, at 2). Petitioner claims his attorney pressured him into taking a plea by "overwhelming" petitioner by telling petitioner the government was going to seek a life sentence if petitioner did not plead guilty. (*Id.*). Petitioner claims he pled guilty "to guns and stuff" he was not guilty of. (*Id.*). Petitioner goes on to claim he was given less than an hour to go over his final PSR before sentencing, and that his attorney told him he would be sentenced to 12 years and would receive a further reduction for cooperation under Rule 35(b). (*Id.*). Petitioner's attorney denies pressuring petitioner and denies telling petitioner he would be sentenced to 12 years. (Doc. 11, at 14-18).

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective

assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Therefore, petitioner must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 57. In the plea context, a petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted).

Whether there is a reasonable probability is a fact-dependent question that requires consideration of any "contemporaneous evidence to substantiate [the] defendant's expressed preferences." *Mayfield*, 955 F.3d at 712 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (internal quotation marks omitted) (alteration in original)). "A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (internal quotation marks omitted). *See also United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (concluding any prejudice from any misrepresentations by defense counsel about the consequences of a guilty plea was dispelled by the time the defendant pleaded guilty based on the court's colloquy during the plea hearing); *United States v. Lemaster*, 403 F.3d 215, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Here, the record is clear that petitioner was not pressured to plead guilty. Petitioner's attorney denies exerting such pressure or promising an unrealistic sentence. More important, however, the contemporaneous record belies such nonsense. Petitioner

swore under oath, multiple times, that no one pressured him to plead guilty or made any promises to him except those in the written plea agreement. That agreement, and the Court's colloquy, made it very clear to petitioner that there were no promises about the sentence he would receive and that it could be as high as the statutory maximum. Petitioner swore under oath that he understood all this and was pleading guilty because he was guilty. Petitioner also swore under oath that he had plenty of time to review the plea agreement with his attorney.[3] Petitioner fully understood that the sentence he received may be different from what his attorney predicted, so even if his attorney predicted 12 years, petitioner was not prejudiced because he knew the sentence could be different. In short, petitioner's claim that he was unduly pressured to plead guilty flies in the face of the clear record to the contrary.

Thus, the Court denies petitioner's motion on this ground.

### C.    Failing to Investigate

Petitioner claims his attorney was ineffective for failing to investigate his case. (Doc. 1, at 3). Petitioner argues his attorney should have gotten fingerprints and DNA to show that petitioner did not handle the gun or drugs. (Id.). Elsewhere in his petition, petitioner argues that his attorney was ineffective for "failing to argue ghost dope" and "failing to obtain evidence" by obtaining "body cam and dash cam video." (Id., at 9).

Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir. 1993) (quoting *Strickland*, 466 U.S. at 691); *see also Forsyth v. Ault*, 537 F.3d 887, 892 (8th Cir. 2008) ("One of trial counsel's strategic decisions is that of 'reasonably deciding when to cut off further investigation.'"). As the Eighth

---

[3] The Court is highly skeptical that his attorney went over the final PSR with petitioner less than an hour before the sentencing hearing, given his attorney's denial. Nevertheless, that is irrelevant to the question of whether petitioner had plenty of time to consider pleading guilty. The final PSR comes well after the guilty plea and is irrelevant to the decision whether the guilty plea was voluntary.

Case 1:23-cv-00003-CJW-MAR    Document 28    Filed 06/30/23    Page 24 of 29

Circuit Court of Appeals has also observed,

> "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Indeed, *Strickland* itself presented a situation where "[c]ounsel's strategy . . . decision not to seek more character or psychological evidence than was already in hand was . . . reasonable." *Strickland*, 466 U.S. at 699. And . . . the Supreme Court again confirmed that "there comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative, and the search for it distractive from more important duties." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009) (per curiam).

*Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014) (additional and internal parallel citations omitted).

Here, petitioner's claims that his attorney failed to investigate to obtain evidence is without merit. First, petitioner pled guilty and admitted all the facts showing his guilt. Thus, any further investigation is irrelevant. In any event, petitioner speculates that testing of the firearm would have revealed DNA or fingerprints of another person. Mere speculation is not enough. Vague and conclusory allegations are not sufficient to state a ground for relief under Title 28, United States Code, Section 2255. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986); *see also Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (affirming district court's summary dismissal of ineffective assistance of counsel claim on grounds that it was "brief, conclusory and fail[ed] to cite to the record"); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (finding that petitioner who filed a Section 2254 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness, which was not enough to undermine confidence in the outcome of the trial, as required by *Strickland*). Further, even if another person's DNA or fingerprints were on the gun, it does not preclude petitioner's possession of it.

Moreover, the discovery file contained all of the body camera and dash cam video available. (Doc. 14, at 22-23). As for faulting his attorney for failing to make an argument about ghost dope, the strategic decisions of counsel about what to argue are not subject to attack under *Strickland*. "Trial counsel's strategic decisions are virtually unchallengeable unless they are based on deficient investigation, in which case the presumption of sound trial strategy . . . founders on the rocks of ignorance." *Ault*, 537 F.3d at 892 (quoting *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006) (internal quotation marks omitted)). Finally, Mr. Walker's affidavit and attachment show that he and his team competently did their best to investigate the case and pursue the avenues petitioner wanted them to follow. (Doc. 11-1).

Thus, the Court denies petitioner's motion on this ground.

### D.    *Failure to Attempt to Suppress Evidence*

Petitioner argues his attorney was ineffective for failing to file a motion to suppress evidence found in his car. (Doc. 1, at 7). Petitioner claims the search was unlawful because "the police waited past the 10 day time limit it had to obtain a warrant to search my car." (*Id.*).

This argument has no merit because petitioner's appointed counsel filed such a motion prior to petitioner hiring Mr. Walker to represent him. (Crim. Doc. 25). The Court denied the motion on the merits. (Crim. Doc. 65). Moreover, by the time Mr. Walker entered his appearance, the deadline for filing dispositive motions had passed. Thus, even if Mr. Walker would have filed yet another motion to suppress, the Court would have denied it as untimely.

Petitioner suggests "this issue is, at bottom, an issue of whether Mr. Walker failed to appeal the denial of the Motion to Suppress rather than an issue of failing to file a Motion to Suppress." (Doc. 24, at 7). Petitioner pled guilty, however, and by doing so waived all rights to appeal the Court's order denying his motion to suppress evidence. *See United States v. Pierre*, 870 F.3d 845, 848 (8th Cir. 2017) (holding that a valid guilty

plea waives a defendant's claims that officers violated the constitution in conducting a search); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Thus, even if Mr. Walker had filed an appeal and raised this issue on appeal, it would have been rejected out of hand.

Thus, the Court denies petitioner's motion on this ground.

### E.    *Misrepresenting the Likely Sentence*

Petitioner argues his attorney was ineffective for misrepresenting the amount of time petitioner would serve.  (Doc. 1, at 8).  Petitioner again asserts his attorney told him that if he pled guilty under the plea agreement, petitioner would only receive a 12-year sentence.  (*Id.*).

The Court finds this to be duplicative of petitioner's first allegation that his attorney was ineffective for pressuring him into pleading guilty.  For the reasons stated, the Court finds this argument without merit.

### F.    *Failure to File Appeal*

Petitioner claims his attorney was ineffective for failing to file a direct appeal. (Doc. 1, at 9).

When "a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."  *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019); *accord Witthar v. United States*, 793 F.3d 920, 922 (8th Cir. 2015) ("An attorney's failure to file a requested appeal automatically satisfies the deficient-performance prong of *Strickland* because it is professionally unreasonable." (internal quotation marks omitted)).  *See also Watson v. United States*, 493 F.3d 960, 963–64 (8th Cir. 2007) (holding that an attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of

prejudice is required). Because "the district court is not permitted to make a credibility determination on the affidavits alone," the Eighth Circuit has held that an evidentiary hearing is required when, as here, a defendant claims he or she requested an appeal and was disregarded by counsel. *United States v. Sellner*, 773 F.3d 927, 929–30 (8th Cir. 2014).

Thus, the Court holds in abeyance its ruling on this claim pending an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Cases, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner must make a substantial showing of the denial of a constitutional right to be granted a certificate of appealability in this case. *See Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that it is undebatable that the record shows that petitioner's Section 2255 motion is without merit as to the first four claims. Consequently, a certificate of appealability is denied as to those claims. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (to satisfy Section 2253(c), a petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

The Court holds in abeyance its decision as to the merits of petitioner's claim his attorney was ineffective for failing to file an appeal and, for that reason, also holds in abeyance its decision whether to issue a certificate of appealability on that claim.

## VI. CONCLUSION

For these reasons, petitioner's Motion to Vacate, Set Aside or Correct Sentence (Doc. 1) is **denied as to petitioner's first four claims**. Petitioner is entitled to no relief under Title 28, United States Code, Section 2255 on those claims. A certificate of

appealability is also **denied** on those claims.   The Court **holds in abeyance** its ruling on petitioner's claim his attorney was ineffective for failing to appeal, pending an evidentiary hearing on that sole issue, and also **holds in abeyance** its decision whether to issue a certificate of appealability on that claim.   An evidentiary hearing has been scheduled for **Friday, August 25, 2023, at 9:00 a.m.;** United States Courthouse, Courtroom 3, 111 Seventh Avenue SE, Cedar Rapids, IA.   (*See* Doc. 26).

      **IT IS SO ORDERED** this 30th day of June, 2023.

                            _____

                            C.J. Williams
                            United States District Judge
                            Northern District of Iowa